SECRETARY OF JUSTICE, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent; PORFIRIO BURGOS BURGOS, Intervener.

No. C-63-61.     Decided December 16, 1963.

*J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for petitioner. *Raúl Torres González* for intervener.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On March 11, 1962, a public peace officer detained intervener Porfirio Burgos Burgos because he was allegedly

operating a motor vehicle under the influence of intoxicating liquor. Upon searching the vehicle—on the occasion of the arrest carried out—he found a firearm and proceeded, then and there to seize the vehicle in pursuance of the provisions of § 37 of the Weapons Law, as amended by Act No. 39 of June 4, 1960, 25 L.P.R.A. § 447 (Supp. 1962).[1] Five days later the Secretary of Justice wrote a letter to Burgos informing him that the seizure of the vehicle "was due to the fact that that day the vehicle was used to load, transport, carry and transfer a weapon [revolver] in violation of the Act," and advising him that the confiscation above described and begun by the seizure so notified could be challenged within the following 15 days in the corresponding part of the Superior Court, as well as of his right to give bond for the appraised value of the automobile.

It was not until April 30,[2] 45 days after the notice on the seizure of the automobile was sent, that appellee resorted to the Superior Court, San Juan Part, by means of a complaint entitled "challenge of confiscation." He contended that the alleged seizure and confiscation was due to an alleged violation of the Act and that such acts were null and void, since on the aforesaid date he had authorization to carry the weapon seized by virtue of a court order, copy of which was in possession of the District Attorney at Large of the De-

---

[1] "The Secretary of Justice shall seize any vehicle . . . which is used for loading, unloading, transporting, carrying, or transferring . . . any weapon in violation of this Act.

"For the seizure and disposal of vehicles . . . there shall be followed the same procedure established by the act known as 'Uniform Vehicle, Mount, Vessel . . . Act.' "

[2] The complaint filed bears the typewritten date of March 30, but the filing stamp reads April 30. From certain statements made in the course of an incident on dismissal it appears that the attorney who represented the appellee at that time was confident that the vehicle would be returned without the need of further judicial action, based on certain conversations had with officers of the Department of Justice. There is a conflict between the parties on the scope of the agreement reached in these conversations.

partment of Justice. In his answer the Secretary of Justice denied that appellee carried the weapon lawfully, and specifically alleged that when he was caught on the aforesaid date he was carrying the same "outside the scope" of the terms of the judicial authorization granted to him. By way of special defense, he prayed for dismissal of the action on the ground that it had been filed after the expiration of the 15-day term provided by Act No. 39 of 1960 *supra*. The same prayer was contained in a motion to dismiss.

At a hearing held May 10, 1963, and without granting the motion to dismiss, the trial judge ordered plaintiff to file an amended complaint. He complied. The Secretary reproduced the motion to dismiss the complaint for want of jurisdiction; the same was argued and, without putting it in writing, the court entered an order, as it appears from the minutes of the session of June 12, to the effect that "Having examined the amended complaint filed . . . *the court regards it as a civil action* and orders defendant to answer . . . ." The practical effect of this ruling of respondent judge was to deny the motion to dismiss. We issued a writ of certiorari to review this order.

The applicable law is § 2(a) of Act No. 39 of June 4, 1960, as amended by Act No. 10 of September 1, 1961, 34 L.P.R.A. § 1722 (Supp. 1962), which copied verbatim reads as follows:

"The proceeding shall be begun by the seizure of the property by the Secretary of Justice, the Secretary of the Treasury or the Police Superintendent, through their delegates, policemen or other peace officers. The officer under whose authority the action is taken shall serve notice on the owner of the property seized or the person in charge thereof or any person having any known right or interested therein, of the seizure and of the appraisal of the properties so seized, said notice to be served in an authentic manner, within ten (10) days following such seizure and such notice shall be understood to have

been served upon the mailing thereof with return receipt requested. The owners, persons in charge, and other persons having a known interest in the property so seized may challenge the confiscation within the fifteen (15) days following the service of the notice on them, through a complaint against the officer under whose authority the confiscation has been made, on whom notice shall be served, and which complaint shall be filed in the Part of the Superior Court corresponding to the place where the seizure was made and shall be heard without subjection to docket. All questions that may arise shall be decided and all other proceedings shall be conducted as in an ordinary civil action. Against the judgment entered no remedy shall lie other than a certiorari before the Supreme Court, limited to issues of law. *The filing of such complaint within the period herein established shall be considered a jurisdictional prerequisite for the availing of the action herein authorized.*" (Italics ours.)

Before the enactment of the Act copied, there were in force different provisions on confiscation in different laws which were consistent with the fiction that the liability could fall on the thing used as the means or instrument for the commission of an offense. Section 62 of Act No. 6 of June 30, 1936, 13 L.P.R.A. § 1717 (1955), supplemented by § 97, 13 L.P.R.A. § 1822 (1955), provided for the confiscation and disposition of vehicles used to commit violations of the Beverages Act;[3] § 5 of Act No. 220 of May 15, 1948, 33 L.P.R.A. § 1251, provided for the seizure and confiscation of devices, vehicles, tools and implements utilized in connection with the prohibited games of *bolita, bolipool,* lotteries

---

[3] Section 97 was amended by Act No. 132 of May 8, 1948 (Sess. Laws, p. 300) in order to add a provided clause to the effect that both the filing of the appeal within 10 days after notice of the confiscation and the return of the summons within 20 days from the date of its issuance shall be considered prerequisites to the exercise of the action challenging the confiscation.

See *Colón* v. *Sec. of the Treasury,* 79 P.R.R. 809 (1957); *Metro Taxicabs* v. *Treasurer,* 73 P.R.R. 164 (1952); *Torres* v. *Buscaglia, Treas.,* 68 P.R.R. 314 (1948); *General Motors Acceptance* v. *Brañuela,* 61 P.R.R. 701 (1943), and 60 P.R.R. 680 (1942).

and clandestine combinations, and, without prescribing any special proceeding, it permitted the judicial determination on the legality of the confiscation;[4] § 37 of Act No. 17 of January 19, 1951, 25 L.P.R.A. § 447, authorized the Secretary of Justice to confiscate any vehicle utilized in the unlawful transportation of a concealed weapon, and although it authorized the challenge of the confiscation by means of a complaint against the Commonwealth within 15 days following the notice, it was silent on the jurisdictional character of this period;[5] § 77(f) of Act No. 2 of January 20, 1956 (Sp. Sess. Laws 1955, p. 306), empowered the Secretary of the Treasury to confiscate and sell at public auction any vehicle engaged in the transportation of merchandise on which the corresponding taxes had not been paid, but it did not prescribe specifically any procedure for challenging any administrative action to that end.

██ In view of this situation, the Legislative Assembly chose to establish a uniform procedure for all confiscation cases, regardless of the identity of the agency or officer intervening in the confiscation and of the unlawful purpose or aim for which the article or object confiscated is utilized. The reports of the House Judiciary Committee[6] and of the Senate Judiciary Committee (Criminal)[7] disclose further that one of the primary purposes considered was to avoid (1) delay in the procedures for disposition of the property confiscated, and (2) the "congestion" of vehicles seized and deposited in the Office of Transportation. This accounts in part for the determination that the 15-day term for filing

[4] *General Motors Acceptance* v. *District Court,* 70 P.R.R. 898 (1950).

[5] *Ochoteco* v. *Superior Court,* 88 P.R.R. 500 (1963); *Commonwealth* v. *Superior Court; Torres, Int.,* 76 P.R.R. 789 (1954); *Stuckert Motor Co.* v. *Dist. Court; Comm. of P.R., Int.,* 74 P.R.R. 494 (1953).

[6] IX-4 Journal of Proceedings 1743–44 (1957), and X-2 *id.* 996 (1958).

[7] X-4 Journal of Proceedings 1918 (1958).

568

the complaint challenging the confiscation be of jurisdictional character *in all cases*.

■ We should not forget either that actually this procedure available to the owner of the property seized is but a waiver of the Commonwealth's immunity to be sued,[8] *Ocasio* v. *People*, 79 P.R.R. 27 (1956), and that to that end it may impose such conditions as it may deem advisable. *Escambrón Development Corp.* v. *Commonwealth*, 82 P.R.R. 662 (1961); *Larroca* v. *Aboy*, 82 P.R.R. 478 (1961); *Santiago* v. *People*, 74 P.R.R. 196 (1952); *Acevedo* v. *People*, 69 P.R.R. 402 (1948); *Mayagüez Light, Power & Ice Co.* v. *Tax Court*, 68 P.R.R. 482 (1948); *Campis* v. *People*, 67 P.R.R. 366 (1947). It is well to note that the Act on Claims and Suits Against the Commonwealth, No. 104 of June 29, 1955, expressly provides in § 4, 32 L.P.R.A. § 3079 (Supp. 1962), that nothing therein shall affect "[actions] . . . covered by specific legislation, *which actions shall continue to be conducted under the laws applicable*," and also bars any action for damages against the Commonwealth by reason of an act or omission of an officer, agent or employee "in enforcing a law or regulation, even if the said law or regulation proves to be invalid," § 6, 32 L.P.R.A. § 3081(a) (Supp. 1962).

■ ■ It is clear that the uniform procedure prescribed is exclusive, regardless of the ground of the challenge, whether called nullity of actions or impropriety of the confiscation. Plaintiff's contention to the effect that he was not violating the Weapons Law at the time of the seizure because he had a judicial license authorizing him to carry the weapon, is the reason adduced to challenge the confiscation. Such reason should have been alleged within the only pro-

---

[8] On the propriety of an injunction to prevent the disposition of confiscated property, see § 678(3) of the Code of Civil Procedure, 1933 ed., 32 L.P.R.A. § 3524.

ceeding authorized by the Commonwealth to be sued. And in failing to comply strictly with a requirement which the statute itself denominates jurisdictional,[9] the action cannot be prosecuted regardless of its label. Any claim in this connection is but a subtlety in an attempt to escape the consequences of plaintiff's inadvertence.

*Downs* v. *Porrata, Pros. Atty.*, 76 P.R.R. 572 (1954), invoked by the intervener, is not applicable. That case did not raise any jurisdictional question, but merely discussed the effect of an executive pardon of a criminal offense in a civil proceeding challenging the seizure. The language of that opinion relied on to hold that in the present case the confiscation has not as yet been perfected because no judicial action has been taken in that sense, is not applicable either because it was consistent with the state of legislation existing at that time. See § 37 of the Weapons Law, 25 L.P.R.A. § 447, before it was amended by Act No. 39 of 1960 *supra*.

The other questions raised by the intervener do not merit discussion.

The order entered by the Superior Court, San Juan Part, on July 12, 1963, will be set aside and judgment will be rendered granting the motion to dismiss for want of jurisdiction and, accordingly, dismissing the complaint.

---

[9] In similar situations we have upheld the need for strict compliance with the requirements which the statute denominates jurisdictional. *Ramos* v. *Secretary of the Treasury*, review 62-293, judgment of November 29, 1963, on the filing of the petition for certiorari to review an order on bond incident in a complaint challenging income-tax deficiencies. *Godreau* v. *Secretary of the Treasury*, 75 P.R.R. 251 (1953).